IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
DIVISION

| | | |
|---|---|---|
| IN RE APPLICATIN OF TATIANA AKHMEDOVA | § § § § § § § § § | 5-20-MC-1099-JKP-RBF |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Jason Pulliam:**

This Report and Recommendation concerns the Ex Parte Application For Discovery Pursuant To 28 U.S.C. § 1782, filed by Tatiana Akhmedova. *See* Dkt. No. 1. The Application has been referred for disposition pursuant to Rules CV-72 and 1 of Appendix C to the Local Rules for the United States District Court for the Western District of Texas. *See* Dkt. No. 3. Authority to enter this recommendation stems from 28 U.S.C. § 636(b)(1)(B).[1] For the reasons set forth below, it is recommended that the Application, Dkt. No. 1, be **GRANTED IN PART AND DENIED IN PART**, as set forth herein.

---

[1] Although the District Court referred this matter for disposition, several courts have suggested that granting relief under 28 U.S.C. § 1782(a) may be dispositive for purposes of magistrate judge jurisdiction. *See, e.g.*, *In re Caceres*, No. 1:19-mc-00405-KS-RHW, 2020 WL 2523120, at *4 (S.D. Miss. May 18, 2020) ("Granted, an application under § 1782 is not an enumerated dispositive pretrial matter under Section 636(b)(1)(A), but in looking at the nature of the proceeding, a ruling on such is dispositive insofar as the proceedings in the federal district court are concerned."), appeal docketed, No. 20-60463 (5th Cir. Jun. 8, 2020); *Phillips v. Beierwaltes*, 466 F.3d 1217, 1222 (10th Cir. 2006) (questioning, without deciding, whether an application made pursuant to 28 U.S.C. § 1782 may be referred for disposition pursuant to 28 U.S.C. § 636(b)(1)(A)). Accordingly, the Court will dispose of this matter by Report and Recommendation.

**Factual and Procedural Background**

This § 1782 Application arises out of a 2016 divorce between Applicant Tatiana Akhmedova and her ex-husband Farkhad Akhmedov. Involved also are, as described in the Application, Farkhad's fraudulent attempts to evade two English money judgments issued in December 2016 and March 2018 in Tatiana's favor. Because the Application is filed ex parte, the background information discussed herein is all derived from the Application. Thus, the Application explains that to date Farkhad has failed to voluntarily satisfy any portion of the English Judgments. Instead, Farkhad, assisted by his son Temur Akhmedov, has engaged in a series of fraudulent transfers of his assets to various alter-ego entities—including transfer of the megayacht the M/Y Luna, which the English Court has since declared now legally belongs to Tatiana.

Tatiana filed various claims within the English Family Court proceedings against Farkhad, Temur, and the various entities. Her goal was setting aside the transfers. The Application explains that the English Court in turn issued several freezing injunctions and ancillary orders for disclosure against Farkhad, the entities, and Temur. Discovery in the English proceedings, the Application explains, recently revealed that since January 2018, Temur—who controls and manages the M/Y Luna—has systematically destroyed a wide variety of documents in an apparent attempt to frustrate Tatiana's attempt to collect on the judgments. Accordingly, Tatiana applied for and was granted an order requiring Temur to deliver his electronic devices and disclose the email addresses, cloud accounts, and mobile communications used by him since January 1, 2013, as well as all passwords and security verifications associated with these devices and accounts for independent forensic investigation. The English Court also ordered Temur to cooperate with the independent forensic expert to access, decrypt, and examine the relevant data.

To date, however, the independent expert has been unable to access any of Temur's cloud accounts or devices using the credentials Temur provided. And Temur hasn't provided any assistance with the matter. He claims he doesn't possess the back-up passcodes or devices needed to access the devices and accounts.

Documents recently produced by Great Circle—the entity responsible for providing email hosting and IT services to the M/Y Luna—reveals that in February 2019, the captain of the vessel (presumably at Farkhad and/or Temur's direction) requested that Great Circle delete the vessel's mailboxes and purge the email server. Great Circle, however, has advised Tatiana that Rackspace, Great Circle's email hosting at the time, may have archived the deleted records.

Accordingly, to assist Tatiana in the English Court proceedings against Temur, Tatiana seeks a court order directing Rackspace to produce, within 14 days of service of her subpoena: (1) all documents concerning email hosting services and/or archiving of electronic data related to email accounts maintained by the M/Y Luna; (2) all documents concerning hosting services and/or archiving of electronic data in connection with third party vendors Great Circle Systems or Triton Technical with respect to the M/Y Luna; and (3) all documents concerning email hosting services and/or archiving of electronic data for any email accounts maintained by Farkhad or Temur, including but not limited to Farkhad@akhmedov.net, Temur@akhmedov.net, and temur@stecapital.net. Tatiana also seeks a court order requiring Rackspace to (1) preserve all documents and evidence "potentially relevant to the subject matter of [her] document request" and (2) maintain the confidentiality of "the fact and content of [her] discovery requests." Prop. Order. To that end, Tatiana requests that the Court permit her to circumvent Rule 45's notice requirements such that notice of the Court's order and any subpoena resulting from it be stayed until after Tatiana receives the aforementioned documents. Finally, Tatiana asks that the Court

retain jurisdiction over this matter "for the purpose of enforcement and assessing any supplemental request for discovery assistance" that she may request.

## Analysis

"To promote international dispute resolution and comity, § 1782 authorizes federal district courts to issue discovery orders ancillary to proceedings in 'foreign or international tribunals.'" *Republic of Ecuador v. Connor*, 708 F.3d 651, 654 (5th Cir. 2013) (quoting 28 U.S.C. § 1782(a)). In order to obtain discovery under 28 U.S.C. § 1782(a), an applicant such as Tatiana must demonstrate the following: (1) the applicant is an "interested person"; (2) the discovery is "for use in a proceeding in a foreign or international tribunal"; and (3) the source of the requested discovery "resides or is found" in the district where the application is filed. *Tex. Keystone, Inc. v. Prime Nat. Res., Inc.*, 694 F.3d 548, 553 (5th Cir. 2012) (quoting 28 U.S.C. § 1782).

A district court, however, is "not required to grant a § 1782(a) discovery application simply because it has authority to do so." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004). Accordingly, even if an applicant makes the required showing, district courts should consider the following non-exclusive factors when evaluating a § 1782 application: (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding"; (2) the nature and character of the foreign proceeding and the "receptivity of the foreign government, court, or agency to federal-court judicial assistance"; (3) whether the request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the requests are "unduly intrusive or burdensome." *Id.* at 244-45.

As discussed further below, Tatiana has sufficiently addressed the three required statutory considerations as well as a majority of the discretionary factors. Some of her discovery requests, however, are overbroad and unduly burdensome and should therefore be rejected. Tatiana has also failed to cite any authority to support her request to circumvent Rule 45's notice requirements. Absent persuasive authority that adequately addresses the due process concerns that accompany this type of request, both Farkhad or Temur should be provided notice of the subpoena in accordance with Rule 45. Finally, the Court should decline to retain jurisdiction over this matter until an uncertain point in the future as Tatiana requests.

*§ 1782's Statutory Considerations.* Tatiana easily satisfies all three statutory requirements. First, as a party to the underlying English proceedings, she is an "interested person" for purposes of § 1782. *See Intel*, 542 U.S. at 256 ("No doubt litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782."). Tatiana also seeks the discovery "for use in" the English proceedings. Specifically, the discovery will aid Tatiana in enforcing her foreign money judgment against Farkhad. Lastly, Rackspace is headquartered in San Antonio and therefore "resides" or is "found" in this District.

*§ 1782's Discretionary Considerations*. Section 1782's discretionary considerations here also merits granting the Application, albeit with a more tailored scope. First, Rackspace is not a participant to the English proceedings and, therefore, the need for § 1782 aid is more "apparent." *Intel*, 542 U.S. at 244. This is particularly true given Temur's failure to disclose—and in fact, systematic deletion of—the documents in the English proceeding. Second, the nature of the English action doesn't implicate any factor or policy that would weigh against granting Tatiana's Application. Instead, English courts would likely be receptive to this Court assisting Tatiana in enforcing its judgment that Farkhad and Temur appear to be intent on evading. Nor would

5

permitting the discovery conceal an attempt to circumvent English proof-gathering restrictions or other English or domestic policies. To the contrary, granting Tatiana's Application would assist the English court in ensuring Temur's disclosure and compliance with that court's various freezing orders. Tatiana's request for information related to the M/Y Luna also doesn't appear unduly intrusive or burdensome. But the same isn't true for Tatiana's request for all documents concerning email hosting services and/or archiving of electronic data for any email accounts maintained by Farkhad or Temur. Tatiana's request that Rackspace be ordered to preserve all documents and evidence "potentially relevant to the subject matter of [her] document request" is similarly overbroad.

Tatiana hasn't explained why she should be entitled to recover all documents concerning email hosting services and/or archiving of electronic data for *any* email accounts maintained by Farkhad or Temur irrespective of the subject matter of the document. It also shouldn't be Rackspace's responsibility to search through its archive to determine what documents *might be* "potentially relevant to the subject matter of [Tatiana's] document request" and then preserve them. Prop. Order. Instead, as the party requesting the discovery, it is Tatiana's burden to narrow the scope of information sought. *See* Fed. R. Civ. P. 26(b), 45(d)(1). Accordingly, the District Court should reject Tatiana's request to subpoena documents and enter a preservation order that isn't narrowly tailored to the English proceedings. To the extent Tatiana can craft a more tailored request, she could perhaps submit such a request to the undersigned in a request for reconsideration or even to the District Court in connection with an Objection to this Order. In the latter course is chosen, the District Court could then—if it is so inclined—take up that more narrowly tailored request. In selecting between these options, Tatiana should review the Order

referring this matter to the undersigned, as it may constrain her ability to raise new issues for the first time to the District Court.

*Maintaining Confidentiality of These Proceedings and Any Ensuing Subpoena*. Tatiana also requests that the Court excuse her from notifying Farkhad and Temur of her intent to subpoena the information from Rackspace as otherwise required by Federal Rule of Civil Procedure 45(a)(4). In a similar vein, Tatiana seeks to prohibit Rackspace from alerting Farkhad and Temur of the subpoena. These requests—not uncommon in criminal investigations—make sense here given Farkhad and Temur's active attempts to avoid Tatiana's judgment, including by destroying documents relevant to fraudulent transfers. But Tatiana has failed to provide the Court with any authority to permit her to circumvent Rule 45's notice requirements. *Cf*. 18 U.S.C. §§ 2703-2705.

Once a district court grants a party's § 1782 application, the Federal Rules of Civil Procedure generally govern. *See Tex. Keystone*, 694 F.3d at 554. Because § 1782 provides that "*[t]o the extent that the order does not prescribe otherwise*, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure," 28 U.S.C. § 1782 (emphasis added), Tatiana claims—without citing any authority—that the Court is authorized to except her from complying with Rule 45's notice requirement. But Tatiana neglects to address the due process concerns inherent with this request, particularly in light of the fact that her Application requests *ex parte* relief. *See Gushlak v. Gushlak*, 486 F. App'x 215, 217 (2d Cir. 2012) (recognizing that "it is neither uncommon nor improper for district courts to grant applications made pursuant to § 1782 *ex parte*" but in such a situation, "[t]he respondent's due process rights are not violated because he can later challenge any discovery request by moving to quash pursuant to Federal Rule of Civil Procedure 45(c)(3)").

Accordingly, absent any authority addressing the Court's due process concerns, Tatiana's request to circumvent Rule 45's notice requirements and order Rackspace to maintain the confidentiality of the fact and content of her discovery efforts should be denied.

Again, this topic could be revisited in further briefing, either to the undersigned in a motion to reconsider or to the District Court in connection with Objections to this Report and Recommendation.

*Retaining Jurisdiction*. Finally, Tatiana's request that the Court retain jurisdiction over this matter "for the purpose of enforcement and assessing any supplemental request for discovery assistance" should be denied. There is no basis to keep this matter open indefinitely merely to guard against the contingency that Tatiana might require further discovery assistance at some uncertain point in the future. To the extent Tatiana needs further discovery from Rackspace (or any other entity or individual who resides in this District) or assistance enforcing her subpoena, she may file a new § 1782 application or institute a new action seeking to compel enforcement of the subpoena, *see* Fed. R. Civ. P. 45(d)(2)(B)(i). Any such proceeding could reference this matter as a related case.

**Conclusion and Recommendation**

For the reasons discussed above, it is recommended that the Application, Dkt. No. 1, be **GRANTED IN PART** in that Tatiana should be authorized to issue and serve a subpoena on Rackspace US, Inc. d/b/a Rackspace Technology for the production of the following documents:

1) All documents in the possession and control of Rackspace concerning cloud services and/or archiving of information provided with respect to email accounts maintained by the vessel M/Y Luna, including but not limited to the following email accounts:

captain@my-luna.com; chiefofficer@my-luna.com; chiefengineer@my-luna.com; or any other email address containing "@my-luna.com"; and

2) All documents in the possession or control of Rackspace concerning cloud services and/or archiving of information provided in connection with Great Circle Systems or Triton Technical with respect to the vessel M/Y Luna.

Rackspace should respond to Tatiana's subpoena within 14 days after service, unless Rackspace makes a sufficient showing that based on the nature of the request or its current operations, the subpoena fails to provide it with a reasonable time to comply or Rackspace otherwise provides the Court with a basis to quash or modify the subpoena. *See* Fed. R. Civ. P. 45(d)(3).

Finally, to ensure that compliance with the subpoena doesn't unfairly subject non-party Rackspace to significant expense, *see* Fed. R. Civ. P. 45(c)(2)(B)(ii), Tatiana should be ordered to meaningfully confer with Rackspace after serving the subpoena to determine whether and to what extent she should cover the cost of Rackspace's compliance.

All other requests raised by the Application should be **DENIED**.

### Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy by certified mail, return receipt requested, to those not registered. Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The objecting party shall file the objections with the clerk of the court, and serve the objections on all other parties. A

party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusory, or general objections. A party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149-52 (1985); *Acuña v. Brown & Root*, *Inc.,* 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to timely file written objections to the proposed findings, conclusions, and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

    **IT IS SO ORDERED**.

    SIGNED this 30th day of October, 2020.

                                       RICHARD B. FARRER
                                       UNITED STATES MAGISTRATE JUDGE